ORIGINAL

FILED IN OPEN COURT

James N. Hatten, Clerk

By: _____
Deputy Clerk

# GUILTY PLEA and PLEA AGREEMENT

United States Attorney
Northern District of Georgia

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION
## CRIMINAL NO. 4:14-CR- 4

The United States Attorney for the Northern District of Georgia ("the Government") and Defendant Brandon Lee Edwards, enter into this plea agreement as set forth below in Part IV pursuant to Rule 11 (c)(1)(B) of the Federal Rules of Criminal Procedure. Brandon Lee Edwards, Defendant, having received a copy of the above-numbered Criminal Information and having been arraigned, hereby pleads GUILTY to Counts 1 through 5.

## I.  ADMISSION OF GUILT

1. The Defendant admits that he is pleading guilty because he is in fact guilty of the crimes charged in Counts 1 through 5.

## II. ACKNOWLEDGMENT & WAIVER OF RIGHTS

2. The Defendant understands that by pleading guilty, he is giving up the right to plead not guilty and the right to be tried by a jury.  At a trial, the Defendant would have the right to an attorney, and if the Defendant could not afford an attorney, the Court would appoint one to represent the Defendant at trial and at every stage of the proceedings.  During the trial, the Defendant would be presumed innocent and the Government would have the burden of proving him guilty beyond a reasonable doubt.  The Defendant would have the

right to confront and cross-examine the witnesses against him.  If the Defendant wished, he could testify on his own behalf and present evidence in his defense, and he could subpoena witnesses to testify on his behalf.  If, however, the Defendant did not wish to testify, that fact could not be used against him, and the Government could not compel him to incriminate himself.  If the Defendant were found guilty after a trial, he would have the right to appeal the conviction.

3. The Defendant understands that by pleading guilty, he is giving up all of these rights and there will not be a trial of any kind.

4. By pleading guilty, Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could have been filed.

5. The Defendant also understands that he ordinarily would have the right to appeal his sentence and, under some circumstances, to attack the conviction and sentence in post-conviction proceedings.  By entering this Plea Agreement, the Defendant may be waiving some or all of those rights to appeal and to collaterally attack his conviction and sentence, as specified below.

6. Finally, the Defendant understands that, to plead guilty, he may have to answer, under oath, questions posed to him by the Court concerning the rights that he is giving up and the facts of this case, and the Defendant's answers, if untruthful, may later be used against him in a prosecution for perjury or false statements.

## III.   ACKNOWLEDGMENT OF PENALTIES

7. The Defendant understands that, based on his plea of guilty, he will be subject to the following maximum and mandatory minimum penalties:

**As to Count 1**

    a. Maximum term of imprisonment: 20 years.

    b. Mandatory minimum term of imprisonment: None.

    c. Term of supervised release: 0 year(s) to 3 years.

    d. Maximum fine: $250,000.00, due and payable immediately.

    e. Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

    f. Mandatory special assessment:  $100.00, due and payable immediately.

**As to Count 2**

    g. Maximum term of imprisonment: Life.

    h. Mandatory minimum term of imprisonment: 7 years.

    i. Any term of incarceration imposed on this count must be served consecutively to any other term of imprisonment.

    j. Term of supervised release: 0 year(s) to 5 years.

    k. Maximum fine: $250,000.00, due and payable immediately.

    l. Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

m. Mandatory special assessment:  $100.00, due and payable immediately.

n. Forfeiture of any and all property involved in the offense.

### As to Count 3

o. Maximum term of imprisonment: 20 years.

p. Mandatory minimum term of imprisonment: None.

q. Term of supervised release: 0 year(s) to 3 years.

r. Maximum fine: $250,000.00, due and payable immediately.

s. Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

t. Mandatory special assessment:  $100.00, due and payable immediately.

### As to Count 4

u. Maximum term of imprisonment: 20 years.

v. Mandatory minimum term of imprisonment: None.

w. Term of supervised release: 0 year(s) to 3 years.

x. Maximum fine: $250,000.00, due and payable immediately.

y. Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

z. Mandatory special assessment:  $100.00, due and payable immediately.

4

**As to Count 5**

aa.   Maximum term of imprisonment: Life.

bb.   Mandatory minimum term of imprisonment: 15 years.

cc.   Term of supervised release: 0 year(s) to 5 years.

dd.   Maximum fine: $250,000.00, due and payable immediately.

ee.   Full restitution, due and payable immediately, to all victims of the offense(s) and relevant conduct.

ff.   Mandatory special assessment:  $100.00, due and payable immediately.

gg.   Forfeiture of any and all property involved in the offense.

8. The Defendant understands that, before imposing sentence in this case, the Court will be required to consider, among other factors, the provisions of the United States Sentencing Guidelines and that, under certain circumstances, the Court has the discretion to depart from those Guidelines. The Defendant further understands that the Court may impose a sentence up to and including the statutory maximum as set forth in this paragraph and that no one can predict his exact sentence at this time.

9. REMOVAL FROM THE UNITED STATES:  The Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses, including the offense to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to this offense,

5

removal is presumptively mandatory.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## IV.   PLEA AGREEMENT

10. The Defendant, his counsel, and the Government, subject to approval by the Court, have agreed upon a negotiated plea in this case, the terms of which are as follows:

## Dismissal of Counts

11. The Government agrees that, upon the entry of the Judgment and Commitment Order, any and all remaining counts still pending against Defendant based on the Indictment in case number 4:13-CR-0026-RLV-WEJ shall be dismissed pursuant to Standing Order No. 07-04 of this Court and to Rule 48(a) of the Federal Rules of Criminal Procedure.  The Defendant understands that the Probation Office and the Court may still consider the conduct underlying such dismissed counts in determining relevant conduct under the Sentencing Guidelines and a reasonable sentence under Title 18, United States Code, Section 3553(a).

6

## No Additional Charges

12. The United States Attorney for the Northern District of Georgia agrees not to bring further criminal charges against the Defendant related to the charges to which he is pleading guilty. The Defendant understands that this provision does not bar prosecution by any other federal, state, or local jurisdiction.

## Factual Basis

13. The parties agree that if this case went to trial, the Government would prove by admissible evidence and beyond reasonable doubt the following facts:

14. Shortly after 11:00 pm on March 6, 2012, the Defendant walked into a Sav-a-ton convenience store in Cedartown, Georgia wearing a hooded jacket with the hood over his head. The Defendant put a cloth over his face, pulled a pistol out, pointed it at the lone cashier, and demanded money. Shortly thereafter, two customers entered the store, and the Defendant quickly left the store without taking any money.

15. The incident was recorded on Sav-a-ton's video surveillance system. On March 19, 2012, a customer who spoke briefly with the Defendant at the Sav-a-ton store immediately before the robbery was shown a photographic line-up of six white inmates from the Floyd County Jail. The customer identified the Defendant as the man in the store.

16. Approximately around midnight on or about March 6, 2012, the Defendant entered a Marathon gas station in Rome, Georgia, approached the loan cashier while wearing a mask, pointed the gun at her, and demanded

money. The cashier emptied cash from the cash register into a bag, which she handed to the Defendant. The Defendant directed her at gunpoint to walk to the back of the store, and he then fled out the front door. In total, the Defendant took approximately $84 from the store, not included additional money in a charitable donation jug that he took during his exit.

17. The incident was recorded on Marathon's video surveillance system, and the Floyd County Police Department (FCPD) collected blood samples from the front door and counter, which the robber left in the course of the robbery from a wound on his hand. A DNA test later confirmed a match to the Defendant.

18. Soon after the Marathon robbery took place, the Defendant entered the rear door of a Citgo gas station in Rome wearing a hooded jacket, a cloth mask, and gloves and approached the two cashiers working in the store. The Defendant pointed a handgun at both cashiers and demanded money. The cashiers emptied the cash from one cash register into a bag, which they handed to the Defendant. The Defendant then directed the cashiers at gun point to walk to the front of the store. As the three men approached the front door, a customer walked in, and the robber fled out the rear door of the store. The cashiers reported that the robber took approximately $851.

19. The incident was recorded on Citgo's video surveillance system, and the FCPD collected blood samples left at the counter, which the cashiers said came

8

from a cut on the robber's hand.  A DNA test later confirmed a match to the Defendant.

20. Later in the morning on March 7, FCPD officers located the Defendant in a room of the South Winds Motel and took him into custody.  After obtaining a state search warrant and the Defendant's consent, FCPD officers searched his motel room and found, *inter alia*, a dark leather jacket with a white hood, a loaded Omega .25 caliber pistol (serial number 324574), a .25 caliber magazine and six .25 caliber rounds, and twenty rolls of coins.

21. FCPD officers also located the Defendant's 2001 Hyundai Elantra in the parking lot and saw a plastic charitable donation jug in plain view inside the vehicle.  In executing a state search warrant on the vehicle, FCPD officers found a partial box of .25 ACP ammunition containing thirty-two rounds, a stun gun, and a plastic donation jar labeled "Delak" with bloodstains, which was later identified by the Marathon store clerk as the collection jar taken from the Marathon store during the robbery.

22. On March 7 and March 8, 2012, the Defendant was interviewed by FCPD officers and Cedartown Police Department officers.  The Defendant was read his *Miranda* rights and signed a waiver of counsel form.  The Defendant confessed to committing the Marathon and Citgo robberies as well as the attempted Sav-a-ton robbery.

9

23. Sales receipts from the Sav-a-ton, Citgo, and Marathon stores establish that the stores purchase gasoline from refineries located outside the State of Georgia.

24. Special Agent Steve Kosch determined, based on his examination of the Omega .25 caliber pistol recovered from the Defendant's motel room, that the firearm was not manufactured in the State of Georgia and traveled in or affected commerce.

## Sentencing Guidelines Recommendations

25. The Government will recommend that the Defendant receive the two-level adjustment for acceptance of responsibility pursuant to Section 3E1.1 of the Sentencing Guidelines, and the additional one-level adjustment if the offense level is 16 or higher.  However, the Government will not be required to recommend acceptance of responsibility if, after entering this Plea Agreement, the Defendant engages in conduct inconsistent with accepting responsibility. Thus, by way of example only, should the Defendant falsely deny or falsely attempt to minimize Defendant's involvement in relevant offense conduct, give conflicting statements about Defendant's involvement, fail to pay the special assessment, fail to meet any of the obligations set forth in the Financial Cooperation Provisions set forth below, or participate in additional criminal conduct, including unlawful personal use of a controlled substance, the Government will not be required to recommend acceptance of responsibility.

## Right to Answer Questions, Correct Misstatements, and Make Recommendations

26. The Government reserves the right to inform the Court and the Probation Office of all facts and circumstances regarding the Defendant and this case, and to respond to any questions from the Court and the Probation Office and to any misstatements of fact or law. Except as expressly stated elsewhere in this Plea Agreement, the Government also reserves the right to make recommendations regarding application of the Sentencing Guidelines.

## Right to Modify Recommendations

27. With regard to the Government's recommendation as to any specific application of the Sentencing Guidelines as set forth elsewhere in this Plea Agreement, the Defendant understands and agrees that, should the Government obtain or receive additional evidence concerning the facts underlying any such recommendation, the Government will bring that evidence to the attention of the Court and the Probation Office. In addition, if the additional evidence is sufficient to support a finding of a different application of the Guidelines, the Government will not be bound to make the recommendation set forth elsewhere in this Plea Agreement, and the failure to do so will not constitute a violation of this Plea Agreement.

11

## Sentencing Recommendations

**Fine--No Recommendation As To Amount**

28. The Government agrees to make no specific recommendation as to the amount of the fine to be imposed on the Defendant within the applicable guideline range.

**Restitution**

29. The Defendant agrees to pay $935.06 as restitution to the Clerk of Court for distribution to the following victims of the offense(s) to which he is pleading guilty and all relevant conduct, including, but not limited to, any counts dismissed as a result of this Plea Agreement:

| | |
|---|---|
| Marathon (Mapco) Oil Corporation | $84.00 |
| Citgo Petroleum Corporation | $851.06 |

**Forfeiture**

30. The Defendant acknowledges that each asset listed below is subject to forfeiture pursuant to 18 U.S.C. 924(d) and 28 U.S.C. 2461(c) and agrees that he shall immediately forfeit to the United States any property involved in the commission of the offense(s) in Count(s) 2 and 7, including, but not limited to:

      a.   an Omega, .25 ACP pistol, serial number 32457, and

      b.   thirty-eight rounds of .25 ACP ammunition.

31. The Defendant waives and abandons all right, title, and interest in the all of the property listed above (referred to hereafter, collectively, as the Subject

Property) and agrees to the administrative or judicial forfeiture of the Subject Property. In addition, the Defendant waives and abandons his interest in any other property that may have been seized in connection with this case, particularly 16 rolls of pennies ($8.00), 2 rolls of nickels ($4.00), 1 roll of dimes ($5.00), and 1 roll of quarters ($10.00). The Defendant agrees to the administrative or judicial forfeiture or the abandonment of any seized property.

32. The Defendant states that he is the sole and rightful owner of the Subject Property, that to the best of his knowledge no other person or entity has any interest in the Subject Property and that he has not transferred, conveyed, or encumbered his interest in the Subject Property. The Defendant agrees not to file any claim, answer, or petition for remission or restitution in any administrative or judicial proceeding pertaining to the Subject Property or any other property seized in this case, and if such a document has already been filed, the Defendant hereby withdraws that filing.

33. The Defendant agrees to hold the United States and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. The Defendant acknowledges that the United States will dispose of any seized property, and that such disposal may include, but is not limited to, the sale, release, or destruction of any seized property, including the Subject Property. The Defendant agrees to waive any and all constitutional, statutory, and equitable

13

challenges in any manner (including direct appeal, a Section 2255 petition, habeas corpus, or any other means) to the seizure, forfeiture, and disposal of any property seized in this case, including the Subject Property, on any grounds.

34. The Defendant acknowledges that he is not entitled to use forfeited assets, including the Subject Property, to satisfy any fine, restitution, cost of imprisonment, tax obligations, or any other penalty the Court may impose upon the Defendant in addition to forfeiture.  However, as to the 16 rolls of pennies ($8.00), 2 rolls of nickels ($4.00), 1 roll of dimes ($5.00), and 1 roll of quarters ($10.00) seized by the United States, the United States Attorney's Office for the Northern District of Georgia will ask the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF&E) to forward those funds to the Clerk of the Court for partial payment of any restitution ordered by the Court.

35. The Defendant consents to the Court's entry of a preliminary order of forfeiture against the Subject Property, which will be final as to him, a part of his sentence, and incorporated into the judgment against him.

## Financial Cooperation Provisions

**Special Assessment**

36. The Defendant understands that the Court will order him to pay a special assessment in the amount of $500.

**Fine/Restitution - Terms of Payment**

37. The Defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court for eventual disbursement to the appropriate account

14

and/or victim(s). The Defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the Defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, he agrees that the custodial agency and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The Defendant understands that this payment schedule represents a minimum obligation and that, should Defendant's financial situation establish that he is able to pay more toward the fine and/or restitution, the Government is entitled to pursue other sources of recovery of the fine and/or restitution. The Defendant further agrees to cooperate fully in efforts to collect the fine and/or restitution obligation by any legal means the Government deems appropriate. Finally, the Defendant and his counsel agree that the Government may contact the Defendant regarding the collection of any fine and/or restitution without notifying and outside the presence of his counsel.

**Financial Disclosure**

38. The Defendant agrees that Defendant will not sell, hide, waste, encumber, destroy, or otherwise devalue any such asset worth more than $1,000 before sentencing, without the prior approval of the Government. The Defendant understands and agrees that Defendant's failure to comply with this provision of

15

the Plea Agreement should result in Defendant receiving no credit for acceptance of responsibility.

39. The Defendant agrees to cooperate fully in the investigation of the amount of restitution and fine; the identification of funds and assets in which he has any legal or equitable interest to be applied toward restitution and/or fine; and the prompt payment of restitution or a fine.

40. The Defendant's cooperation obligations include: (A) fully and truthfully completing the Department of Justice's Financial Statement of Debtor form, and any addenda to said form deemed necessary by the Government, within ten days of the change of plea hearing; (B) submitting to a financial deposition or interview (should the Government deem it necessary) prior to sentencing regarding the subject matter of said form; (C) providing any documentation within his possession or control requested by the Government regarding his financial condition and that of his household; and (D) fully and truthfully answering all questions regarding his past and present financial condition and that of his household in such interview(s); and (E) providing a waiver of his privacy protections to permit the Government to access his credit report and tax information held by the Internal Revenue Service.

41. So long as the Defendant is completely truthful, the Government agrees that anything related by the Defendant during his financial interview or deposition or in the financial forms described above cannot and will not be used

against him in the Government's criminal prosecution. However, the Government may use the Defendant's statements to identify and to execute upon assets to be applied to the fine and/or restitution in this case. Further, the Government is completely free to pursue any and all investigative leads derived in any way from the interview(s)/deposition(s)/financial forms, which could result in the acquisition of evidence admissible against the Defendant in subsequent proceedings. If the Defendant subsequently takes a position in any legal proceeding that is inconsistent with the interview(s)/deposition(s)/financial forms–whether in pleadings, oral argument, witness testimony, documentary evidence, questioning of witnesses, or any other manner–the Government may use the Defendant's interview(s)/deposition(s)/financial forms, and all evidence obtained directly or indirectly therefrom, in any responsive pleading and argument and for cross-examination, impeachment, or rebuttal evidence. Further, the Government may also use the Defendant's interview(s)/deposition(s)/financial forms to respond to arguments made or issues raised sua sponte by the Magistrate or District Court.

### Recommendations/Stipulations Non-binding

42. The Defendant understands and agrees that the recommendations of the Government incorporated within this Plea Agreement, as well as any stipulations of fact or guideline computations incorporated within this Plea Agreement or otherwise discussed between the parties, are not binding on the

17

Court and that the Court's failure to accept one or more of the recommendations, stipulations, and/or guideline computations will not constitute grounds to withdraw his guilty plea or to claim a breach of this Plea Agreement.

## Limited Waiver of Appeal

43. LIMITED WAIVER OF APPEAL: To the maximum extent permitted by federal law, the Defendant voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that the Defendant may file a direct appeal of an upward departure or variance above the sentencing guideline range as calculated by the district court. The Defendant understands that this Plea Agreement does not limit the Government's right to appeal, but if the Government initiates a direct appeal of the sentence imposed, the Defendant may file a cross-appeal of that same sentence.

## Miscellaneous Waivers

**FOIA/Privacy Act Waiver**

44. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the

18

Freedom of Information Act, Title 5, United States Code, Section 552, or the

Privacy Act of 1974, Title 5, United States Code, Section 552a.

**Waiver of Right to Challenge Prior Convictions**

45. In consideration of the benefits received by Defendant under the terms of

this Plea Agreement, Defendant agrees that he will not challenge, either directly

or collaterally, in any manner, any prior sentence and/or conviction in any court.

Defendant further agrees that, in the event that a prior sentence or conviction is

vacated, this event will not serve as the basis for a reduced sentence in any

collateral attack on the sentence in this case.

## No Other Agreements

46. There are no other agreements, promises, representations, or

understandings between the Defendant and the Government.

In Open Court this 23rd day of January, 2014.

_____
SIGNATURE (Attorney for Defendant)
Nicole Kaplan

_____
SIGNATURE (Assistant U.S. Attorney)
Nathan P. Kitchens

_____
SIGNATURE (Approving Official)
Steven D. Grimberg

_____
SIGNATURE (Defendant)
Brandon Lee Edwards

I have read the Information against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. I am fully satisfied with the representation provided to me by my attorney in this case.

_Brandon Lee Edwards_                     _1-23-2014_
SIGNATURE (Defendant)                    DATE
Brandon Lee Edwards

I am Brandon Lee Edwards's lawyer. I have carefully reviewed the charges and the Plea Agreement with my client. To my knowledge, my client is making

an informed and voluntary decision to plead guilty and to enter into the Plea

Agreement.

_____          _____ 1/23/14 _____

SIGNATURE (Defense Attorney)          DATE
Nicole Kaplan
Federal Defender Program, Inc.
Suite 1500, Centennial Tower
101 Marietta Street NW
Atlanta, GA 30303
(404)-688-7530

_____State Bar of Georgia Number

Filed in Open Court

This 23rd day of January, 2014

By _____

U. S. DEPARTMENT OF JUSTICE
Statement of Special Assessment Account

This statement reflects your special assessment only. There may be other penalties imposed at sentencing.

| ACCOUNT INFORMATION | |
| --- | --- |
| CRIMINAL ACTION NO.: | 4:14-CR- |
| DEFENDANT'S NAME: | BRANDON LEE EDWARDS |
| PAY THIS AMOUNT: | $500 |

Instructions:
1. Payment must be made by **certified check** or **money order** payable to:
   Clerk of court, U.S. District Court
   **\*personal checks will not be accepted\***
2. Payment must reach the clerk's office within 30 days of the entry of your guilty plea
3. Payment should be sent or hand delivered to:
   Clerk, U.S. District Court
   600 East First Street
   Rome, Georgia  30161
   (Do Not Send Cash)
4. Include defendant's name on **certified check** or **money order.**
5. Enclose this coupon to insure proper and prompt application of payment.
6. Provide proof of payment to the above-signed AUSA within 30 days of the guilty plea.